OPINION' of the Court, by
Judge Waixace.—
This is a contest for land held under adversé titles. Manson’s executors, the appellees, were complainants in the court below, and their claim will be first investigated. It depends on the following entry with the surveyor for the county of Kentucky : “ October 31, 1780, Peter Manson enters 1089 acres, upon a treasury warrant?? on Hickman’s creek, adjoining Abraham Hite on the west, and the whole length of his line, and to run off at right angles to the same westwardlv for quantity, including the quantity in four lines.” Two claims ra the name of Abraham Hue are exhibited, to wit, the following entry : “ October 30, 1780, Abraham Hite, assignee, enters 600 acres, by virtue of a military warrant, on Hickman’s creek, adjoining his survey of 2QOO acres, *5 on the south east end ; beginning at two blach oaks and a wh'te oak, running N. 30 E. 400 poles, crossing Hickman’s creek at 60 poles, to two oaks and a hickory, at the head of a draft in Douglass’s line ; thence with his line N 60 W. 24) poles, to a hickory, white oak and hoopwood ; then S. 30 W. 249 poles, then S. 60 E. 400 poles, to the beginning.” 'And the following survey : “ November 8, 1775, surveyed for Col, Abraham Hite, assignee, 2000 acres of land, in Fincastle county, by virtue of a warrant granted by Lord Dun-more, under the King’s proclamation in 1763, lying on Hickman’s creek, a branch of the. Kentucky river ; beginning at three ashes and a hickory, and running N. 30 E. 400 poles, to a corner in a line of a survey made by James Douglass ; then with said line S. 60 E. 800 poles, crossing tiickman’s creek, to a hickorv, white oak and hoopwood in said line ; then S. 30 W. 499 poles, crossing Hickman’s creek, to a stake ; then N. 60 W. 800 poles, to the beginning.” And it is not shown, that Abraham Hite had any other claims to land on Hick-jw man’s creek, or adjacent thereto, at the time when Manson’s entry was made. Hite’s entra was made the day before Manson’s, and with the same surveyor, and as it calls to adjoin a survey of Hite’s on the south east end, subsequent locators could not presume, that Manson meant to adjoin the entry on the west, as by doing so he would runinto the survey, more especially as the entry had not a west or westwardly end ; but they would be led to enquire lor this survey ; and no such survey being to be found in the office of the surveyor for the county of Kentucky, they would infer that it was an old military survey, and could be found in the office of the surveyor for the county of Fincastle, of which the county of Kentucky had formerly been a part. The distance between those two offices was great; and if it was a hardship to be obliged to travel so far for a copy of Hite’s survey, it must be charged to the law ; but it never has been held, that a call for a survey of record ought to he rejected. When a copy of this survey was obtained, it would appear that it had a west or west-wardly end, to which Munson’s entry might be attached. But the entry in question, is made on Hickman’s creek, and to place it on the west end of Hite’s survey, would throw it on the waters of Jessamine creek. This *6 is a fatal error in the description, if the entry does^tsafc contain other, calls by which it can be corrected. To the calls it contains, the court will now attend. It ap« pearing to be certain, that Manson meant to adjoin Hite’s survey, and not Hite’s entry, the survey ought to be considered as composing a part of Manson’s entry. This survey specifies that it binds on a line made by James Douglass, which crosses Hickman’s creek. But it is urged that the survey does not contain a description by which it could have been found with certainty, and that it has not been made appear that it was generally known. Moreover, the court conceives, that when a survey is called for, it cannot aid an entry, further than it contains special description, -or specifies objects which are notorious. Kentucky river must have been generally known; and it is believed that Hkkman’s creek was sufficiently so, n r in the argument has a suggestion been made to the contrary. The copy of Hite’s 200Ú acre military survey, which is exhibited, proves that it was made by Isaac Hite in 1775; and the depositions of Levi Todd and Robert Todd express, they, had no doubt, that prior to October 31, 1780 (the date, ot Manson’s entry) Hite’s survey was as generally known to the'early adventurers, who were acquainted with the claims on Hickman’s creek, as the other mili-, tary surveys made by Douglass, Floyd, and Taylor, Indeed, they do not say, what degree of knowledge those adventurers had of the other military claims which had been made in this country, but Levi Todd proves, that in 1777, two men, who had improved in that quarter, suspecting that their improvements were in some of the military survey* made by James Douglass or Isaac Hite, applied to his brother, John Todd, and himself, for information ; and that they went with them to their improvements, and, upon examination, were of opinion, that they were within Abraham Hite’s 2000 acre claim. This implies, that John Todd and Levi Todd, at that early period, had a pretty accurate knowledge of the. situation of those military surveys, and of Hite’s in particular, although they might not know its lines. Robert Todd also proves, that prior to October, 1780, Isaac Hite, who made this survey, generally resided in Har-rodsburg. And Jacob Soduskie further proves, that he was one of the company with Douglass when he made *7 a parcel of surveys on the waters of FJkhorn, Hickman and Jessamine, he thinks at;< ui 40.0C0 acres; that he yvas fre quentK asked, and v ent to shew those lines, that people might make irr pio\ t men¡s op ihe outside of them ; and that thev were then tailed Douglass’s lines» And that, in early times, he repeatedly went with pro-pie to shew where Douglass’s line (which is called for in Hite’s survey, and is described in Hite’s entry of 600 acres as Douglass’s lower line) crossed Hickman. These depositions do not expressly prove, but from them it mat be rationally presumed, that Hite’s survey and Douglass’s line, which it calls for, had sufficient notoriety. And when it is considered, that those military surveys, having been made i,n the garden of the Kentucky country, were highly interesting to their respective owners ; and that from the passage of the land law in 1779, a considerable number of early improvers, and multitudes of other people, who were anxious to secure lands in that quarter, had, for mere than a year prior to the date of the entry under investigation, been endsavoring to acquire information of those military surveys, the presumption is irresistible, that the one made for Hite, and Douglass’s line, by which it is bounded, were then known to the generality of those conversant in its vicinity. Or to say the least, the presumption is violent, that on making reasonable enquiry and search, they, or either of them, could have been found ; and it is conceived, that nothing but special proof to the contrary ought to destroy the presumption. The court need only add, that when the validity of an entry depends on a call for an object, which, from its nature, could not excite general attention, and no person could have an interest in discovering it, the entry ought not to be sustained, unless it contains a description which will lead to the object, or the object itself is specially proven to have been well known. But when the object must have attracted general observation-such as a watercourse, a station, &c. or where a considerable number of persons must, from interest or curiosity', have been acquainted with it — such as a mineral spring, salt lick, an old survey, &c. then accuracy of description, and pointed proof of notoriety, may be dispensed with, and their place be supplied by circumstantial evidence, and, in some instances, by presumption only, founded *8 on general knowledge or considerations. As to. thfe call in Munson’s entry, to lie on Hickman’s creek, if taken alone, it is deceptive ; but when it is taken in con-nexion with the other calls it contains, and those contained in the certificate of Hite’s survey, which is made a part of the entry, that call is of no other importance, than to point out the part of the country intended ; for raking it as a special call, other locators would easily discover that it was an immaterial mistake. 1 he court would now proceed to investigate the claims of the appellants, which, in their nature, are of superior dignity to that of the appellees ; but the locations and entries, on which they depend, are so vague and imperfect, that no attempt has been made to support them, either by depositions or arguments ; but they have relied entirely on their elder grants, except as to the settlement and pre-emption obtained by Leonard Helm. Concerning which, it will be only observed, that it has not been bttr cer supported in this cause than in that of Helme's heirs vs. Craig, wherein this court lately derided, on a rehearing, that the claim could not be sustained; and the reasons rendered in that case are now referred to, which are still deemed to be conclusive.
An entry tffl join a military i“rve>> aliho” oUkein Finca*, tle count7> *⅝
miftakeor defect in on* Pa'c °f the dibe correeted”^ another part of the
_ Machi, — Black — speeT^vs. W'ljm, p. dei, 9a — vs. Har.nj — jiesl pass vs. Arnold, i^at ”3 —%- Har 8s_ccud man vs Thomas, f1",r-*75-Mark. ¡⅛. 374,
Notoriety of nillht3r!' <vvey i^^pnfvtd — '0*r that it could |>ave found ¡0^⅛^⅛"*1>⅛
An object, (narned ⅛ ao ⅛⅛ could not excite s.eneral. atten. rnua01^be^wfil dafo-ibed, *o “ eoul<1 ⅜ or ir.uii lie fupported by jioficive proof of notoriety.
But where the object muft have attracted general obfer-Vation —watercourse cr ita • ti< n, or excited general tvterefi or curiofity — fait lick, mine-pi Spring, old turvey,thenac* Curacy of de-ferí p ion & positive proof of notoriety ipay he difpe^ied with, and cir-«uríiftantial evi. dence be held fufficienr.
And in Some cafes prefnmp Bion alone, aii-íing from general knowledge & general cun* hderaci >ns. M&díeyvs. Craig Har. 98. mijor. vs. M'-Ghu, poli.
*8 Wherefore it is decreed and ordered, that the said decree of the circuit court of Fayette be affirmed ; and that the appellants do pay unto the appellees their costs in thi% behalf expended. Which is ordered to be certified, &c=